**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

LATIN AMERICANS FOR SOCIAL AND ECONOMIC DEVELOPMENT *et al.*,

Plaintiffs,

v.

Honorable Avern Cohn
Case No. 10-10082

The ADMINISTRATOR of the Federal Highway Administration in his official capacity; The FEDERAL HIGHWAY ADMINISTRATION, an agency of the United States Department of Transportation; JAMES J. STEELE, in his official capacity as the Michigan Division Administrator of the Federal Highway Administration

Defendants.
_______________________________________________/

Pursuant to the Court's August 18 Memorandum and Order, Dkt #30, as amended by the August 19 status conference (see August 19 transcript, attached hereto as Ex. A), the defendants hereby provide (1) a description of the process by which the Administrative Record ("AR") was compiled, including electronic search terms utilized, date restrictions applied to any search, and categorical content exclusions used; (2) a hard drive containing the entire record previously lodged with the Court, including a guide to its use; (3) a searchable electronic index[1] accessible on the hard drive organized by date[2]; and (4) a description of the contents of the AR based on the timeline for the Detroit River International Crossing ("DRIC") project timeline. The description

[1] The index links to the associated document in the AR.
[2] As discussed at the August 19 status conference, the Defendants have organized the AR index by date because the documents in the AR often do not fall squarely into one of the categories the Court identified, but rather cover a wide range of topics. See August 19 tr. at 3-4.

of the process by which the AR was complied and a description of the contents of the AR is included *infra*. The hard drive and the searchable electronic index was sent to the Court in hard copy format via overnight mail.

## I. Compilation of the Administrative Record

The AR in the current litigation was assembled using documents from the files of the Federal Highway Administration ("FHWA") and the Michigan Department of Transportation ("MDOT"). The State of Michigan and the United States, along with Canada and the province of Ontario, participate in a border partnership (the "Partnership") formed to consider a new crossing across the Detroit River. For the U.S. study team, FHWA oversaw the environmental review process, while MDOT was responsible for conducting and coordinating many of the studies and public meetings leading up to the Record of Decision ("ROD"). Throughout the DRIC study, MDOT and FHWA conferred about the requirements for properly building and maintaining an administrative record for the NEPA process and coordinated about the criteria to be used. MDOT and FHWA applied the same criteria in determining the contents of the AR but used slightly different processes in compiling the documents for the DRIC AR. The processes used in compiling the AR, as well as the date and categorical content restrictions, are described in detail in the affidavits of Ryan Rizzo, Major Projects Manager for the Michigan Division of the FHWA ("Rizzo Affidavit," attached hereto as Exhibit B), and Mohammed Alghurabi, the MDOT Project Manager for the DRIC Study ("Alghurabi Affidavit," attached hereto as Exhibit C), and are summarized below.

### A. <u>FHWA Compilation Process</u>

FHWA stored the documents and emails related to the DRIC Study on: (1) an internal document management system, (2) three different computer drives, and (3) the official email

boxes of FHWA employees. Rizzo Affidavit at ¶ 4. FHWA searched all these electronic repositories in compiling the DRIC Record. *Id.* at ¶ 5. Documents stored on the document management system were assigned a project identifier unique to the DRIC, and FHWA gathered documents from this system using that project identifier. *Id.*at ¶ 5. The FHWA further searched the computer drives using the term "DRIC" and the email boxes using a set of search terms described below. *Id.* at ¶¶ 5,11.

B. <u>MDOT Compilation Process</u>

MDOT electronically stored on a computer drive dedicated to the DRIC all documents that were considered in the DRIC project. Alghurabi Affidavit ¶ 3. Other DRIC-related material was stored in a file room solely dedicated to the DRIC study. *Id.* The dedicated electronic DRIC drive, dedicated file room, project website, and offices of the DRIC team were searched for any relevant records. *Id.* ¶ 5. When determining what records to include in the AR, no specific search terms were used initially but the emails were searched as described below. *Id.*

C. <u>AR Inclusions and Categorical Exclusions</u>

The agencies used several criteria to determine what materials to include in the AR. First, FHWA and MDOT included all documents in the AR that were used or relied upon, directly or indirectly, by the agencies in reaching its final agency decision. Rizzo Affidavit ¶ 6; Alghurabi Affidavit ¶ 5. Second, the agencies included documents from January 1, 2005 through January 14, 2009. Rizzo Affidavit ¶ 7; Alghurabi Affidavit ¶ 5. This date range reflects the starting and end dates for the DRIC environmental review process leading up to the Record of Decision ("ROD"). Rizzo Affidavit ¶ 7; Alghurabi Affidavit ¶ 5. Specifically in 2005, the state and federal environmental review teams formed, and the consultant that led several environmental studies was retained at that time. Rizzo Affidavit ¶ 7; Alghurabi Affidavit ¶ 5.

Marking the end of the environmental review process, on January 14, 2009, the FHWA signed the ROD. Rizzo Affidavit ¶ 7; Alghurabi Affidavit ¶ 5. The agencies, to provide essential background information, made several exceptions to this date range. See Rizzo Affidavit ¶ 7; Alghurabi Affidavit ¶ 5.

Third, the agencies excluded certain documents by category. These categorical exclusions, which reflect documents that were not relied upon by the decision-maker in reaching the final decision, constitute the following:

a. stand-alone news articles and other media-related documents;

b. contract documents, including original contracts, amendments and associated forms, original and price proposals;

c. draft versions of most documents were excluded where a final draft version was available;

d. draft versions of the Presidential Permit application for the DRIC, which even today has not yet been finalized; and

e. documents that dealt with nearby projects but were not DRIC-related.

Rizzo Affidavit ¶ 8; Alghurabi Affidavit ¶ 6.

In addition to the categorical exclusions listed above, a DVD originally included with the hard copy of the DRIC Final Environmental Impact Statement released and distributed in December 2008, and subsequently removed, was excluded. Rizzo Affidavit ¶ 10; Alghurabi Affidavit ¶ 7. The removal was noticed in the Federal Register and each DRIC FEIS recipient was notified officially in writing. Rizzo Affidavit ¶ 10; Alghurabi Affidavit ¶ 7.

When searching the personal email of the project personnel, the agencies used 38 search terms to identify the relevant documents. Rizzo Affidavit ¶ 11; Alghurabi Affidavit ¶ 8 (listing

search terms). The categorical and date restrictions described above were also applied to this email search. Rizzo Affidavit ¶ 12; Alghurabi Affidavit ¶ 9.

## II. Guide to the Administrative Record

The revised AR index is organized by date. The description below provides a timeline of the DRIC project review designed to help the Court navigate this chronologically-organized index.

A. Background — Project History and Bi-National Coordination (2001 to 2003)

In 2001, representatives of the Michigan Division of the FHWA, MDOT, and two Canadian governmental entities met to discuss border transportation needs and formed a partnership to consider a new crossing. ROD at 1, DRIC016074; DRIC014279 (Final Environmental Impact Statement "FEIS" ES-4)[3]. At this juncture, the governments assessed the purpose and need of the project to determine whether to pursue further environmental reviews. From 2001 to 2003, most of the documents listed in AR index reflect preliminary discussions regarding the need for, and feasibility of, a new crossing across the Detroit River. For example, the record during this time period includes monthly planning, need, and feasibility reports from URS Corporation, Transport Canada's consultant. The ROD discusses the initial meetings concerning the Partnership in Section 1 of the ROD.

B. Initial Project Studies (2004 to June 2005)

In January 2004, the Partnership produced a final Planning/Need and Feasibility (P/NF) Study Report, identifying a long-term strategy to meet the needs of the transportation network

[3] Factual citations are to the bates-numbered pages of the AR previously lodged with the Court on April 16, 2010 (Dkt. # 14). Defendants will also provide in parentheses the corresponding page numbers for citations to the Final Environmental Impact Statement ("FEIS") and Record of Decision ("ROD").

serving the border between Southeastern Michigan and Southwestern Ontario. DRIC014345 (FEIS 2-1). The partnered governments then began to consider several bridge proposals and the environmental effects their associated roadway connections would have on various sites in Eastern Michigan. DRIC002294. From 2004 to July 2005, documents in the AR include, among other things, draft working papers that reflected initial consideration of the environmental effects of any border crossings and initial governance documents. The ROD addresses these initial discussions and analyses in Section 1 of the ROD.

C. Consideration of Alternatives (July 2005 to July 2007)

In July 2005, the Defendants published a Scoping Report, which commenced the full environmental review for the DRIC. DRIC001188-DRIC001234. The report identified the areas in which illustrative alternatives were being considered and the evaluation criteria on which each alternative would be based. On August 31, 2005, the cooperating agencies and a larger group of agencies attended a kick-off scoping meeting in Detroit. DRIC014279 (FEIS ES-4). In December 2005, the DRIC team concluded its analysis of “illustrative” alternatives. The analysis of preliminary practical alternatives began in December 2005 and continued to July 2007. DRIC014281 (FEIS ES-6). From 2005 to July 2007, a large number of documents in the record reflect consideration of the alternatives by state and federal agencies and the public. This includes, *inter alia*, discussions about measures to minimize harm, including preliminary analyses and comments about Section 4(f) of the Department of Transportation Act, Section 7 of the Endangered Species Act, Section 106 of the National Historic Preservation Act, the Clear Air Act, and environmental justice issues. This period was the most active in terms of the breadth and scope of environmental reviews. In the ROD, the numerous analyses that occurred during this time are covered in Sections 3, 4 and 7.

D. Draft Environmental Impact Statement (February 2008 to November 2008)

In February 2008, the Defendants published a Draft Environmental Impact Statement ("DEIS"). DRIC016074 (ROD at 1). The DEIS analyzed nine alternatives for the DRIC crossing, and a no-build alternative. From that time until November 21, 2008, when the FEIS was issued, the AR contains additional environmental reviews and public comment on the DEIS that expanded upon and refined the analyses in the DEIS. In the ROD, the DEIS is discussed in Sections 2, 3, and 7.

E. Final Environmental Impact Statement (February 2008 to November 2008)

The FEIS identified a preferred crossing for the DRIC in Delray. DRIC014411 (FEIS 3-7). From the time of the FEIS' issuance to the date of the publication of the ROD on January 9, 2009, the AR contains public comment and additional environmental analyses. The ROD discusses the FEIS in Sections 2, 3, 5, 6 and 7.

F. Public Participation

During the planning process, MDOT convened almost 100 public meetings, hearings, and workshops to involve the Detroit community in the project's development, including outreach to members of the Delray community. DRIC014279 (FEIS ES-4); DRIC014695 (FEIS ES 6-1). The DRIC partnership also conducted monthly meetings with a Local Advisory Council and Local Agency Group, consisting predominantly of local officials, community organizations and technical professionals. The ROD discusses public participation in Section 7.

Respectfully submitted this 15th day of October, 2010,

BARBARA L. McQUADE

United States Attorney

Kenneth Shaitelman
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9709
P72555
Email: Kenneth.shaitelman@usdoj.gov

IGNACIA S. MORENO
Assistant Attorney General

/s/ *Marissa Piropato*
MARISSA PIROPATO

United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0470
MA Bar # 651630
Email: marissa.piropato@usdoj.gov

Attorneys for Federal Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2010, I electronically filed the foregoing papers with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel:

Anthony M. Alexis
Mayer Brown LLP
1909 K Street, NW
Washington, DC 20006-1101

John C. Berghoff, Jr.
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606

Michael A. Nedelman
28580 Orchard Lake Road, Suite 140
Farmington Hills, Michigan 48334

Patrick Moran
12225 Stephens Road
Warren, MI 48089

/s/ *Marissa Piropato*
MARISSA PIROPATO